# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CRIMINAL NO. 10-CR-30238-WDS |
| ) | |
| EDWARD M. WATSON, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is defendant's motion to suppress (Doc. 15), to which the government filed a reply (Doc. 24). This Court held a hearing on this motion and took the matter under advisement. Defendant asserts that the Court should suppress as evidence items seized from and statements made by the defendant, because defendant's vehicle was illegally searched, and the statements made were a direct result of the illegal search.

## BACKGROUND

Defendant was pulled over by Special Agent Nicholas Manns, FBI, and Illinois State Trooper Matt Renner, members of the Working Against Violent Elements (or "W.A.V.E.") detail, in East St. Louis, Illinois. The officers noticed that defendant was not wearing a seatbelt, and he cut through a parking lot, avoiding a traffic light. Defendant provided his license to officers, who discovered after checking his license, that he was driving with a suspended license. When officers asked defendant whether he had anything illegal in the car, he initially said no, but when asked again, he would not answer. The officers asked defendant to get out of the vehicle, handcuffed him, and escorted him to the rear of the vehicle. Without defendant's consent and without a warrant, the

officers searched defendant's vehicle, found two firearms, ammunition, and a small amount of marijuana. The officers told defendant, and later reported, that the search was performed incident to defendant's arrest. After the search, and after officers informed defendant of his Miranda rights and had him sign a waiver, he provided a statement, which was videotaped in the patrol car of one of the officers. Because the defendant had a suspended license and no passengers were in the car, the officers decided to tow the vehicle, and an officer called a tow truck while the interview was taking place. After giving his statement, defendant convinced officers not to tow his car because he needed it to get to work. The officers obliged, cancelled the tow truck, did not take defendant into custody, issued traffic violations, and drove defendant and his vehicle to his grandmother's house with instructions that he could not drive the vehicle with a suspended license.

## **LEGAL STANDARD**

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted). In order for the Court to determine that evidence obtained or statements made pursuant to a warrantless search can be admitted, "the government must show by a preponderance of the evidence that the search fell within one of the recognized exceptions to the warrant requirement." *United States v. Zahursky*, 580 F.3d 515, 521 (7th Cir. 2009) (citing *United States v. Basinski*, 226 F.3d 829, 833 (7th Cir. 2000)). The preponderance of the evidence standard is understood as meaning "more likely than not, i.e., probable or likely rather than just possible." *United States v. Breland*, 356 F.3d 787, 795 (7th Cir. 2004) (internal quotations omitted).

# ANALYSIS

## A. Search Incident to Lawful Arrest

One exception to the warrant requirement is a search incident to a lawful arrest, which is excepted based on "interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Arizona v. Gant*, 129 S. Ct. 1710, 1716 (2009) (citing *United States v. Robinson*, 414 U.S. 218, 230-34 (1973); *Chimel v. California*, 395 U.S. 752, 763 (1969);*Weeks v. United States*, 232 U.S. 383, 392 (1914)).

In *Chimel*, the Supreme Court further defined the search incident to arrest exception, holding that the search is limited to "the arrestee's person and the area 'within his immediate control' - construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." 395 U.S. at 763.

In *New York v. Belton*, 453 U.S. 454, 460 (1981), the Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile" and any containers found within the passenger compartment. Finally, in *Gant*, the Supreme Court further refined its earlier decisions by holding that:

> Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.

*Gant*, 129 S. Ct. at 1723-24. The search incident to arrest exception is not applicable if there is "no possibility that an arrestee could reach into the area that law enforcement officers seek to search." *Gant*, 129 S. Ct. at 1716.

3

In *Gant*, officers knew, prior to his arrest, that defendant Gant had a suspended driver's license and that there was an outstanding warrant for his arrest for driving with a suspended license. *Id*. at 1715. After arresting two individuals at a residence in which drug activity was suspected, Gant pulled into the driveway, officers recognized him, arrested and handcuffed him after he stepped out of his vehicle. *Id*. The other arrestees were already handcuffed and locked in separate patrol cars, and upon arrival of backup officers, Gant was also placed in the back of a patrol car. *Id*. Once Gant was locked in the patrol car, officers searched his car and found a gun and a bag of cocaine in the pocket of a jacket. *Id.* Gant moved to suppress the evidence, and the Supreme Court held that the search was unreasonable.[1] *Id*. at 1715, 1719.

The Court noted, "[i]n many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence." *Id.* at 1719. "Gant was arrested for driving with a suspended license-an offense for which police could not expect to find evidence in the passenger compartment of Gant's car." *Id.* The Supreme Court noted that other exceptions and circumstances may exist "in which safety or evidentiary interests would justify a search," and that the overarching concern is that "officers may search a vehicle when genuine safety or evidentiary concerns encountered during the arrest of a vehicle's recent occupant justify a search." *Id.* at 1721-23.

In this case, the search of defendant's car cannot be upheld as a search incident to a lawful arrest under the *Gant* standard. To begin with, defendant was lawfully pulled over for failure to wear a seatbelt and avoiding a traffic signal, and lawfully placed under arrest for driving with a suspended license. However, officers could not, simply based on these offenses,

---

[1] The *Gant* opinion did not discuss the inevitable discovery doctrine.

4

have reasonably believed that he could reach anything inside his vehicle, nor could they expect to find firearms and drug evidence. Specifically, defendant was handcuffed and standing under direct guard of at least one officer (of the five officers on the scene) while his car was searched. The government's witness, Special Agent Nicholas Manns, FBI, who along with Illinois State Trooper Matt Renner performed the traffic stop and arrest, testified that he believed that defendant was close enough to try to reach the interior of the vehicle, but that in all likelihood he would have failed. Further, S/A Manns admitted that although he was not thinking about the *Gant* case at the time of the search, he testified that under the *Gant* standard, and reflecting on the situation,"I did not have a right to search the vehicle incident to his arrest once he was handcuffed." (Transcript at 9)

Regarding the second part of the *Gant* test, defendant was arrested for the traffic violation of driving with a suspended license. Officers could not reasonably have expected to find any evidence related to this crime in the defendant's vehicle. Thus, because defendant was secured and guarded before the search, and no evidence related to his arrest could have been found in his vehicle, the warrantless search cannot be excepted from the Fourth Amendment requirements as a search incident to arrest.

**B. Inevitable Discovery Doctrine**

The government asserts, however, that the evidence is separately admissible under the "inevitable discovery doctrine." "The inevitable discovery doctrine holds that even an illegally seized item need not be suppressed if the government can prove by a preponderance of the evidence that the officers would have discovered it by lawful means." *United States v. Stotler*, 591 F.3d 935, 940 (7th Cir. 2010) (citing *Nix v. Williams*, 467 U.S. 431 (1984)). If the

5

government is able to establish this, "then the deterrence rationale animating the exclusionary rule has so little basis that the evidence should be admitted." *United States v. Cartwright*, 630 F.3d 610, 613 (7th Cir. 2010) (citing *Nix*, 467 U.S. at 444). For this doctrine to apply, "the government must show a chain of events that would have led to a warrant or some other justification independent of the unlawful search." *Cartwright*, 630 F.3d at 613 (citing *United States v. Brown*, 64 F.3d 1083, 1085 (7th Cir. 1995)).

In the *Stotler* case, officers knew about Stotler's involvement with manufacturing methamphetamine, and that a warrant was out for his arrest for possessing an excessive amount of pseudoephedrine. *Stotler*, 591 F.3d at 937-38. Officers arranged a potential drug deal involving Stotler and a confidential informant, and without knowing whether the drug deal took place, officers pulled over and arrested Stotler as he drove away from the informant's house. *Id*. at 938. Officers searched Stotler's person and vehicle, seizing Hydrocodone pills, a paint gun containing baggies of methamphetamine and "cut," and a digital scale from the vehicle. *Id*. Stotler moved to suppress the evidence obtained from the search of his vehicle. *Id*. In *Stotler*, the Seventh Circuit found that officers had probable cause to search defendant's vehicle based on the totality of the circumstances, but even if the evidence was not discovered in the initial search, the evidence would have been inevitably discovered during an inventory search. 591 F.3d at 940. The court concluded that:

> [o]bviously, with Stotler in custody, he was not going to be allowed to get in his truck and drive away. Also obviously, the arresting officers would not have allowed the truck to just sit on the street after Stotler was carted away. What they would have done, in all likelihood, was impound the truck and have it towed away. An inventory search would have naturally followed; the evidence would have been inevitably discovered.

*Id*. Notably, the Court did take issue with whether or not the vehicle was ever actually towed to

6

determine that the inevitable discovery doctrine applied.

"Inventory searches constitute a well-recognized exception to the warrant requirement and are reasonable under the Fourth Amendment." *Cartwright*, 630 F.3d at 613 (citing *South Dakota v. Opperman*, 428 U.S. 364, 376 (1976). The Supreme Court has recognized that "local police departments routinely inventory and secure the contents of impounded automobiles" and that "[d]oing so protects the police from potential danger, protects the owner's property while it remains in police custody, and protects the police against claims of lost, stolen, or damaged property." *Cartwright*, 630 F.3d at 613-14 (citing *Opperman*, 428 U.S. at 369). Furthermore:

> [a]n inventory search is lawful if (1) the individual whose possession is to be searched has been lawfully arrested, and (2) the search is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures. Both the decision to take the car into custody and the concomitant inventory search must meet the strictures of the Fourth Amendment. The decision to impound (the 'seizure') is properly analyzed as distinct from the decision to inventory (the 'search').

*Cartwright*, 630 F.3d at 614 (internal citations and quotations omitted).

Upon considering whether a search was reasonable under the Fourth Amendment, "[t]he existence of a police policy, city ordinance, or state law alone does not render a particular search or seizure reasonable or otherwise immune from scrutiny under the Fourth Amendment." *Id*. citing *Sibron v. New York*, 392 U.S. 40, 61 (1968). The Court must look, independently, at the policy followed, and decide whether it is reasonable under the Fourth Amendment. *Cartwright*, 630 F.3d at 614.

Defendant Cartwright was pulled over for operating a vehicle that did not have an illuminated rear license plate, in violation of Indiana law. *Id*. at 612. Cartwright stopped his vehicle in a grocery store parking lot and was accompanied by two passengers: the owner of the

vehicle and her toddler child. *Id*. When an officer asked Cartwright for his driver's license, he could not produce it, and also gave the officer a false name. *Id*. Based on these circumstances, as well as Cartwright's nervous demeanor, the officer "removed him from the car, handcuffed him, and placed him under arrest." *Id*. Another officer removed the passenger and child from the car. *Id.* After Cartwright's arrest, the officer searched the car and found a loaded Ruger semi-automatic pistol. *Id*. An officer had the car towed pursuant to police policy, as Cartwright had been arrested and the passenger did not have a driver's license. *Id*.

> Also pursuant to IMPD policy, Barleston performed an inventory search of the car prior to its impoundment, finding nothing of value, and filled out a tow slip, listing the reason for the tow as "arrest." However, contrary to IMPD policy, Barleston failed to list all of the car's contents, only the keys. He testified that, although he usually lists the inventory of a vehicle on the tow slip, he did not do so in the present case because he found nothing of importance.

*Id*. Although the passenger/owner of the vehicle in *Cartwright* testified that she asked the officers to not tow the car, but instead allow someone else to remove it, officers denied that she made this request. *Id*. at 613. Cartwright moved to suppress the evidence obtained via the search of the car, but the Seventh Circuit found that the officers acted reasonably under the circumstances, and that the evidence would have inevitably been discovered pursuant to an inventory search. *Id*. at 615-16.

In *Cartwright*, the Court noted that the police department had an extensive towing and impounding policy that

> sets forth the circumstances under which the police may tow a car, establishes the procedures officers must follow in calling for a tow, requires an inventory search whenever an officer takes a vehicle into custody, and specifically forbids inventory searches motivated by an officer's desire to investigate and seize evidence of a criminal act.

*Id.* at 614-15 (internal quotations omitted).

8

The Seventh Circuit also found that although the officer failed to conduct a proper inventory search because he did not make a complete list of the property he found in the defendant's car, in compliance with police policy, his mistake did not negate the fact that the property would have been found via a lawful inventory search. *Id.* at 616. Furthermore, "we have held that minor deviations from department policy do not render an inventory search unreasonable." *Id*. citing *United States v. Lamella*, 76 F.3d 146, 148-49 (7th Cir. 1996).

In this case, the Court must consider a limited situation: one in which a tow truck was called and then cancelled by the police after a request by defendant and explanation that if his car was towed he would likely lose his job. The police had decided to tow defendant's vehicle based on the fact that his license was suspended, no passenger was present to drive his car home, and the vehicle was in an unsafe area in East St. Louis. Thus, although the officers began to act according to their extensive tow policy, which included procedures and particular requirements for inventory searches before a tow can take place, the tow never in fact took place. Instead, the officers drove defendant to his grandmother's home in a squad car, and another officer drove defendant's vehicle to his grandmother's. The tow policy presented as Government's Exhibit 5 is silent as to the practices and procedures an officer should follow when such a determination is made. The Court heard testimony that it is practically impossible to have a written policy that covers each and every possible scenario that an officer may be faced with on any given day.

At the hearing, the officers testified that they would not have left defendant's vehicle in East St. Louis upon their decision not to take defendant into custody. Therefore, in this case, the officers were faced with two options for the removal of defendant's vehicle from East St. Louis: (1) tow the vehicle, or (2) drive the vehicle to defendant's destination. In either of these

9

situations, officers stated that an inventory search of the vehicle would have been performed, and the evidence would have been found.

Moreover, the officers testified that it is established policy of the officers (both in the state of Illinois and at the federal level) that anytime a vehicle is occupied by an officer, to move the vehicle or otherwise, it is thoroughly searched to protect the officer's safety and to prevent later lawsuits for claims of lost property. In this case, defendant's vehicle was moved by an officer off of a busy street and into a lot, and later was driven by another officer to defendant's grandmother's home. According to the officers' testimony, whenever an officer steps foot in a vehicle, it is searched, "everytime," even though the policy is not in writing. Specifically, regarding this practice, Trooper Renner testified, "Yes, it's common practice. It's an officer safety thing and we do it everytime." (Transcript at 28). On the same topic, Agent Manns testified, "Yes, for a – particularly for the safety issue in that case. We would have looked through the vehicle to make sure there was nothing that could harm us before myself or another individual moves the vehicle." (Transcript at 16). Manns also testified that officers perform such searches because of concerns of the potential presence of firearms that could harm them, and that it is the "practice" and "policy" to do so. The officers also testified that they do this for their own protection from anything that may be in the vehicle, including firearms, bombs, or other potentially hazardous objects. Regarding this particular situation, Manns testified:

> There are occasions where we'll be asked to do this, would you be willing to drive it to my house, et. cetera, for us. And if it's close, and it's convenient, and we want to help the Defendant, we will do that. And we would have inventory searched it before we did that as well or make sure that nothing was in there that could hurt us.

(Transcript at 18).

Thus, the officers established that it is their policy and routine to conduct inventory searches in circumstances such as those they faced in this case. In light of this policy, it is evident that a lawful inventory search hypothetically could have occurred at two different junctures of the arrest process, had the search not been performed directly after defendant's arrest. Police would have searched the vehicle before moving it off the busy street, and they would have searched the vehicle before driving it to defendant's grandmothers' home. Furthermore, the Court **FINDS** that this type of search, which could be conducted for legitimate officer safety reasons, would have been reasonable in this case. Thus, under the inevitable discovery doctrine, the evidence still would have been found, and the evidence found during the search will not be suppressed.

Defendant argues that an inventory sheet was never filled out, and therefore, the officers did not proceed properly, nor did they take care to follow their policy of protecting themselves from claims of theft. However, an inventory search was never actually conducted in this case, and therefore the lack of a particular form "does not undermine the proposition that the police would inevitably have found the gun through a lawful inventory search." *Cartwright*, 630 F.3d at 616.

Defendant also argues that allowing searches in these situations will induce officers to find reasons to move cars and therefore seize evidence otherwise not lawfully attainable. This is not the case though, as an officer is only in such a situation when the defendant has been arrested and has no one else to operate his vehicle, and the officer determines that for legitimate safety reasons the vehicle must be moved. In this particular case, inevitable discovery of the evidence need not rest on the officer moving the vehicle off of a busy street, which is likely the situation

during most traffic stops.  Here, officers entered and operated the vehicle out of concern for defendant who asserted that he would potentially lose his job if he were forced to post bond and retrieve his car after tow.  Defendant's attempt to capitalize on the kindness of the officers in cancelling the tow truck, upon which an inventory search would have certainly ensued, does not negate the fact that officers would have reasonably searched defendant's vehicle before entering it for safety reasons.

Because the evidence would have been found lawfully, the Court need not discuss whether defendant's videotaped statement was "fruit of the poisonous tree."

## **CONCLUSION**

This Court **FINDS** that a lawful inventory search would have ensued in these circumstances, had the officer's not previously searched the vehicle, and thus the inevitable discovery doctrine applies in this case, rendering the search a lawful exception to the Fourth Amendment requirements.  Defendant's motion to suppress (Doc. 15) is **DENIED** on all grounds raised.

The Court **HEREBY** sets this matter for Final Pretrial Conference on Monday, June 13, 2011 at 3:00 P.M., and Trial on Tuesday, June 21, 2011 at 9:00 A.M.


**IT IS SO ORDERED**

**DATE:   May 17, 2011**

                                            **/s/  WILLIAM D. STIEHL**
                                                   **DISTRICT JUDGE**